Burke, J. (concurring).
The legal issue presented by this appeal is this: Do the prior decisions of this court—particularly our trilogy of “ guest statute ” cases, Babcock v. Jackson (12 N Y 2d 473), Dym v. Gordon (16 N Y 2d 120), and Macey v. Rozbicki (18 N Y 2d 289) —mandate that there be applied to this personal injury action the law of this State or must Michigan’s guest statute be deemed applicable?
It was, until quite recently, well settled that this court would invariably determine the substantive rights and liabilities of litigants by applying the law of the jurisdiction in which the wrong occurred. (See, e.g., Coster v. Coster, 289 N. Y. 438; Kaufman v. American Youth Hostels, 5 N Y 2d 1016.)
Shortly after our decision in Kaufman, the Appellate Division (Fourth Department) had occasion to review this rule of lex loci delictus. (Babcock v. Jackson, 17 A D 2d 694.) As in prior cases, the doctrine was attacked on the basis that its inflexible application often produced unjust results. As in Coster and Kaufman, the rule was again upheld. Justice Hal-PER]sr dissented, stating that “in a case like the present one, in which the relationship of guest and host was created by an arrangement made in New York between New York residents, New York clearly has a vital interest in the determination of the incidents of the relationship.” He continued by noting ‘ ‘ the modern view, in a common-law tort action, [whereby] the law of the State which has ‘ the most significant contacts with the matter in dispute ’ and which has the dominant interest in it is accepted as the governing law. ” (17 A D 2d, supra, p. 695.)
The factual setting in Babcock was truly ideal for demonstrating the unjust and anomalous results which flow from the application of the traditional rule of lex loci delictus. Plaintiff and her friends, Mr. and Mrs. Jackson, left their places of residence in Rochester for a weekend trip to Canada. While passing through the Province of Ontario, Mr. Jackson apparently lost control of his car as it left the highway and crashed into a stone wall. Miss Babcock suffered severe injuries as a result of the accident. After returning to New York, she instituted an action against William Jackson, contending that he operated the vehicle in a negligent manner. At the time of the accident, Ontario had a guest statute immunizing owners and drivers from liability, thus apparently barring recovery in her case. *587 (Highway Traffic Act of Province of Ontario [Ontario Rev. Stat. (1960), ch. 172], § 105, subd. [2].) Judge Fuld, writing for the majority of the court, began by posing this question: “ Shall the law of the place of the tort invariably govern the availability of relief for the tort or shall the applicable choice of law rule also reflect a consideration of other factors which are relevant to the purposes served by the enforcement or denial of the remedy? ” (12 N Y 2d, supra, p. 477.) After reviewing the history of the traditional lex loci delictus choice-of-law rule, Judge Fuld clearly and unequivocally rejected it, noting that such a rule “ ignore [d] the interest which [other] jurisdictions * * # may have in the resolution of particular issues.” (12 N Y 2d, supra, p. 478.)
The rejection of the lex loci doctrine was thus easily accomplished. The vexing problem remained of adopting a new approach for choice of law situations whereby “ Justice, fairness and ‘ the best practical result ’ * * * may best be achieved ”. (12 N Y 2d, supra, p. 481.)
In postulating a choice-of-law process which would replace the lex loci rule, we first indicated in Babcock our adoption of the “ center of gravity ” or “ grouping of contacts ” doctrine. (12 N Y 2d, supra, p. 481.) Thereafter, in elaborating upon the ‘ ‘ grouping of contacts ’ ’ doctrine, it was stated that the ‘ ‘ action involves injuries sustained by a New York guest as the result of the negligence of a New York host in the operation of an automobile, garaged and licensed and undoubtedly insured in New York, in the course of a week-end journey which began and was to end there. In sharp contrast, Ontario’s sole relationship with the occurrence is the purely adventitious circumstance that the accident occurred there ” (12 N Y 2d, supra, p. 482). These contacts were later re-emphasized when it was declared that “it is New York, the place where the parties resided, where their guest-host relationship arose and where the trip began and was to end, rather than Ontario, the place of the fortuitous occurrence of the accident, which has the dominant contacts and the superior claim for application of its law.” (12 N Y 2d, supra, p. 483.)
The holding in Babcock was then clearly expressed in these terms — ‘ ‘ reconsideration of the inflexible traditional rule persuades us # * * that in failing to take into account essen *588 tial policy considerations and objectives, its application may lead to unjust and anomalous results. This being so, the rule, formulated as it was by the courts, should be discarded.”[1] (12 N Y 2d, supra, p. 484.)
Candor requires that we acknowledge the difficulty we experienced in applying the broad language of Babcock in the subsequent case of Dym v. Gordon (supra). Plaintiff and defendant in that case were New York residents taking summer courses at the University of Colorado. On August 11, 1959 without any prior arrangement, Rhoda Dym entered Morris Gordon’s automobile with his consent. Their destination was Longmont, Colorado. Plaintiff’s injuries resulted from a collision with a car owned and operated by a resident of Kansas, which occurred during the short journey to Longmont. The law of Colorado barred a guest’s recovery against his host unless there was a showing of ‘ ‘ willful and wanton disregard of the rights of others.” (Col. Rev. Stats., § 13-9-1.) The issue in Dym, quite simply, was whether the rationale of Babcock required the application of the law of New York or Colorado.
The majority commenced this task by noting that, in conjunction with Babcock, “it is necessary first to isolate the issue, next to identify the policies embraced in the laws of conflict, and finally to examine the contacts of the respective jurisdictions to ascertain which has a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied.” (16 N Y 2d, supra, p. 124; emphasis supplied.) Employing this analysis, I found Babcock distinguishable in *589 view of the fact that ‘ ‘ the parties [in Dym] were dwelling in Colorado when the relationship was formed and the accident arose out of Colorado based activity; therefore, the fact that the accident occurred in Colorado could in no sense be termed fortuituous.” (16 N Y 2d, supra, p. 125.) Continuing, I noted that ‘[1] where Colorado has such significant contacts with the relationship itself and the basis of its formation, the application of its law and the underlying policy [was] clearly warranted.” (16 N Y 2d, supra, p. 125.)
Certain of the dissenters in Dym, also claiming allegiance to Babcock, concluded that New York law should apply. Judge Fuld contended that ‘ ‘ the decisive consideration, in the present case, is .that Colorado’s.statute, paralleling Ontario’s, has as its prime objective the protection of Colorado driver-defendants and their insurance carriers against fraudulent claims and lawsuits. * * * Manifestly, that policy of Colorado can, in no way be served by applying its statute to an action, such as the present, which is brought in New York and involves not residents of Colorado or their insurance carriers but only New Yorkers and a New York based and insured vehicle.” (16 N Y 2d, supra, p. 131.)
The difficulties attached to the formation of a choice-of-law process were thus made evident in Dym. A dichotomy of views was again evidenced by this court in our most recent guest statute case, Macey v. Rozbicki (18 N Y 2d 289, supra). Plaintiff Macey was the sister of the defendant-driver Bita Bozbicki, who was driving her husband’s car. All three were residents of Buffalo. In late June, 1962, plaintiff was invited by the Bozbickis to be their guest for 10 days at a summer residence just across the Niagara Biver. During this vacation, plaintiff was injured when the Bozbicki vehicle was involved in a collision in a Canadian village near their Waverly Beach summer home. As in Babcock, defendant pleaded the Ontario guest statute as a complete defense. In a terse majority opinion, it was stated that “ the relationship of two sisters living permanently in New York was not affected or changed by their temporary meeting together in Canada for a short visit there, especially since the arrangements for that visit had undoubtedly been made in New York State.” (18 N Y 2d, supra, p. 292.) Ignoring the majority’s reliance upon Dym by its determination that the origin of *590 the guest-host relationship was a significant and determinative factor, Judge Keating concurred in the application of New York law because this State was “the residence of the parties and the plae$ in which the automobile is-insured and registered.” (18 N Y 2d, supra, p. 295.)
Macey represents the most recent choice-of-law' case involving a guest statute, and, were it also the latest pronouncement in the conflicts area, I would indeed be' in agreement with the dissenters when they say that the Michigan guest statute should be applied in this case. However the instant case cannot be decided by merely categorizing it with reference to those decisions which involve guest statutes. On the contrary, we must acknowledge that subsequent decisions, involving questions unrelated to the present appeal, have provided the vehicles for “ clarifying ” our choice-of-law process. I refer specifically to our decisions in Matter of Crichton (20 N Y 2d 124); Farber v. Smolack (20 NY 2d 198); Matter of Clark (21 N Y 2d 478), and Miller v. Miller (22 N Y 2d 12). Judge Keating, in his opinion, properly indicates that these decisions effectively advanced the choice-of-law rule as pronounced in Babcock and applied in Dym and Macey. Indeed, Matter of Crichton clearly established that the choice-of-law process consists of an analysis of the interests of the States involved in seeing their law applied in a particular factual situation. (20 N Y 2d, supra, p. 133.)
While we spoke of interest analysis in these recent cases (Matter of Crichton, supra; Farber v. Smolack, supra; Matter of Clark, supra, and Miller v. Miller, supra), I feel that the respective results would have been the same had we adhered to the doctrine of ‘ ‘ grouping of contacts ” or “ center of gravity ” (Babcock v. Jackson, 12 N Y 2d, supra, p. 481). The present litigation, I maintain, is the first case wherein the determination will vary with the selection of a choice-of-law analysis. Thus, were we to consider this case solely in light of Babcock and Dym, it is quite obvious that the Michigan guest statute would be sustained as a defense to the personal injury action. This case then illustrates the significance of the choice-of-law approach. By the same token, I feel it demonstrates the weakness of the interest analysis doctrine. In Dym, for ■ example, the fact that there were other persons involved in the accident who were not from New' York was significant as was the origin *591 of the relationship. These factors, present in this case and relied upon by the dissenters, can no longer be considered as we have firmly committed ourselves- to the interest analysis approach. I am thus unable to join my dissenting brethren who adhere to Dym v. Gordon (supra).
From all that has been written, it is apparent that our decision in- Dym is overruled. I mark the passing of Dym with regret as I viewed that-case as an expression of a policy of this court that we would not always, hold a foreign- guest-statute inapplicable where the defendant was from New York. It is evident that the philosophy of the. court has changed since Bym and, as a result of this transformation, we have firmly embarked ¡upon an interest analysis, approach, to a conflicts problem. For that reason, I join in the majority opinion and concur in its adoption of the. views first - expressed by Judge Keating in Macey v. Rozbicki (18 N Y 2d 289, supra). While this approach may -indeed provide certainty for. guest statute cases, it does not, I feel, remove all future problems -from the-area. Reference to the status of Miss Silk illustrates- this point.
It is not at all clear whether the majority would conclude that she too, although not a New York ".resident, could recover should she bring an action against this defendant. Logically, the majority might declare, as they have in this case (p. 577), that “ the Legislature, in requiring that insurance policies cover liability, for injuries regardless of where the accident takes place # * * has evidenced commendable concern not only for residents of this State, but residents of other States who may be injured as a result of the activities of New York residents.” The dissenters, however, intimate that since Miss Silk could not recover in Michigan, she would presumably be barred from a recovery in this court.
I am not now prepared to decide that question nor am I ready to suggest what this State’s interest .would be in the present situation if the car were not insured in New York. I merely refer to these situations to illustrate the difficulty which we shall encounter in future guest statute cases even under the standard adopted by the majority today. I am well aware, as are my brethren, that guest statutes in general are less rigorously applied today than when they were first enacted (Pedrick, Taken for a Ride: The Automobile Guest and Assumption of Risk, 22 *592 La. L. Rev. 90 [1961]; see, also, Ehrenzweig, Conflict of Laws, § 220) and that such a statute invariably represents a mere exception to a particular State’s general rule of liability. Nevertheless, the statutes still remain in a minority of jurisdictions. While the result reached by the court today may well serve as the basis for a new rule for this State in guest statute cases, it cannot purport to solve the unanticipated factual situations which, no doubt, will confront us shortly. For this reason, and because of the nature of automotive traffic today, I view the entire matter as one of national concern which cannot be settled by any rule this court might proffer. As the matter.is of Federal dimension, only Federal legislation will ultimately succeed in resolving these continuing controversies in a rational and equitable manner.
Until such needed legislation is forthcoming, it will remain incumbent upon us to resolve these guest statute controversies as they arise. Since the onus is presently with us, I would reverse the order of the Appellate Division in this case and reinstate the order of Special Term.

. Following our decision in Babcock v. Jackson (supra), several conflicts scholars were invited to comment upon it by the Columbia Law Review. Professors 'Cavers, Cheatham, Currie, Ehrenzweig, Leflar and Reese responded and expressed their views. (Comments on Babcock v. Jackson, 63 Col. L. Rev. 1212 [1963].) While indicating unanimous support for Babcock’s holding, these professors proffered different theories when evaluating the choice-of-law rule established by that opinion. For example, Professor Cheatham gave great emphasis to our discussion of the concepts of “ center of gravity ” and “ grouping of contacts.” (63 Col. L. Rev. 1229.) Professor Currie believed that the court adopted his theory of “ governmental interests.” (63 Col. L. Rev. 1233, 1234-1235.) Professor Ehrenzweig interpreted the decision as valuable support for his theory of applying “ the law of the state where the insured car is permanently kept”. (63. Col. L. Rev. 1243, 1246.) Professors .Cavers, Leflar and Reese were unable to agree with any of the above-mentioned views. (63 Col. L. Rev. 1219, 1247, 1251.)